IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Larry R. Robinson, Jr., et al.,                        Case No. 3:06CV1047

        Plaintiffs,

      v.                                                 ORDER

CSX Transportation, Inc., et al.,

        Defendants.


These are consolidated suits by two employees of CSX Transportation. Plaintiffs Larry Robinson and Clifford Glenn claim damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.* Jurisdiction exists under 28 U.S.C. § 1331 and 45 U.S.C. § 51.

Pending are counter-motions for summary judgment. [Docs. 57, 68]. For the reasons that follow, plaintiffs' motion [Doc. 68] shall be granted and the CSX's motion [Doc. 57] shall be denied.

## Background

Plaintiffs were the locomotive engineer and conductor of a CSX freight train traveling to Chicago, Illinois, from Willard, Ohio. On the way to Chicago, the train struck a person standing on the tracks. CSX officials reporting to the scene notified the plaintiffs that they could continue their run to Chicago, or be driven to their home terminal in Willard where they could mark off duty.[1]

Plaintiffs opted to return to their home terminal. To transport them, CSX provided a taxi van

---

[1] Under federal hours of services statutes, transportation employees, including railroad personnel, must be off duty for a minimum period of hours before they can go back on duty.

owned by co-defendant M.D. Transportation and operated by co-defendant Phillip Pegues. CSX and M.D. had a contract for the transportation of employees to and from rail yards. En route from Riverdale, Illinois, where the road trip began, to Willard, the van ran a stop sign and struck a tractor-trailer. Phillip Pegues and M.D. have admitted negligence.

### Discussion

The issue raised by the pending motions is whether that negligence is, as a matter of law, imputed to CSX. There are two aspects to this issue: namely, whether 1) plaintiffs were in the scope of their employment when the accident occurred; and 2) M.D. was acting as an agent of CSX.

### 1. The FELA

The FELA provides, in part, that

> [e]very common carrier by railroad while engaging in [interstate or foreign] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

45 U.S.C. § 51.

To present a *prima facie* case under the FELA, plaintiffs must prove that: 1) they were injured while in the scope of their employment, 2) their employment was in furtherance of the railroad's interstate transportation business, 3) the railroad was negligent, and 4) the railroad's negligence in some way caused the injury for which damages are sought. *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985); *see also Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326, 330 (1958); *Sowards v. Chesapeake & O. Ry. Co.*, 580 F.2d 713, 714 (4th Cir. 1978).

Congress enacted the FELA in 1908 to provide "a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer." *Atchison, Topeka & Santa*

*Fe Ry. Co. v. Buell*, 480 U.S. 557, 561 (1987). It is "a broad remedial statute," *id.* at 562, and it is intended to be read liberally in favor of injured railway workers, *Urie v. Thompson*, 337 U.S. 163, 180 (1949) (the Supreme Court recognizes a "standard of liberal construction" to accomplish Congress' objectives).

Under the FELA, railway workers injured while working for the railroad can recover for their injuries on a lower standard of negligence. The statute relaxes the standard of proof regarding causation, such that the employee need only show that the railroad's negligence contributed even slightly to his injury. *See Rogers v. Missouri Pac. R.R. Co*, 352 U.S. 500, 508-09 (1957); *Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265, 269 (6th Cir. 2007).

**Analysis**

**1. Plaintiffs Were in the Scope of Their
Employment When the Accident Occurred**

Plaintiffs' argue that the standard to determine whether an employee is protected by the FELA is whether any part of what they were doing was "incidental to or in furtherance of railroad operations." For support, they look to the second paragraph of § 51 of the FELA, which reads:

> [a]ny employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce  .  .  .  shall be considered as entitled to the benefits of this chapter.

45 U.S.C. § 51.

Congress added this provision in 1939. 53 Stat. 1404. According to the Supreme Court, the amendment sought to remedy the problem of "results of this Court's holdings that, at the moment of his injury, the employee as well as the railroad had to be engaged in interstate commerce in order to come within the coverage of § 1  .  .  .  ." *Reed v. Pennsylvania R. Co.*, 351 U.S. 502, 504

3

(1956). In *Reed*, the Court stated that the test for coverage under the FELA "is not whether the employee is engaged in transportation, but rather whether what he does in any way furthers or substantially affects transportation." *Id.* at 505.

Plaintiffs rely on a companion to *Reed*, *Southern Pac. Co. v. Gileo*, 351 U.S. 493, 498-99 (1956), in which the Court construed the amendment to mean an employee is covered by the FELA "if a railroad employee either furthers interstate commerce in the performance of any part of his duties or in any way 'directly or closely and substantially' affects such commerce." According to plaintiffs, whether the FELA applies is simply whether the activity was incidental to railroad employment, as opposed to a purely private personal endeavor.

CSX argues that a different test is proper. They counter that plaintiffs, while being transported in the van back to Willard, were not acting in the "course and scope of their employment." According to CSX, plaintiffs elected to serve their own interests when they chose to ride back to Willard, rather than resume their duties as engineer and conductor.

As defendant's test is the more rigorous standard, and guiding cases continue to use the "scope of employment" language, *see, e.g.*, *Green*, *supra*, 763 F.2d at 808; *Van Gorder*, *supra*, 509 F.3d at 269;*Waggoner v. Ohio Central R.R., Inc.*, 2007 WL 4224217, at *6 (S.D. Ohio Nov. 27, 2007); I will use this standard to resolve this aspect of the case.

After the accident, the choice CSX gave plaintiffs was limited to two options: drive the train or ride in the van. Plaintiffs opted for the van and were driven to their home terminal by CSX's agent. It served CSX's interests to get the plaintiffs to Willard as expeditiously as possible; once there, plaintiffs could clock out and begin their downtime. While riding in the M.D. van plaintiffs could not mark off duty and they remained on the clock until they arrived at Willard. They were still

4

subject to discipline and had to comply with CSX's operating and safety rules.

Moreover, plaintiffs were not free to choose how and when they would get to their home terminal.[2] CSX did not tell them they could clock out at the scene of the incident. They understood they were to head straight to Willard, could not choose the route, and could not stop without approval from CSX.

These limitations, set by CSX, suited and served its purposes and were for its benefit more so than for that of the plaintiffs.

CSX also claims that the plaintiffs were not in the course and scope of their employment because they were not "deadheading." Defendant acknowledges that most deadheading is beneficial to CSX because it puts crews in the right place at the right time. It asserts that this situation was unique. According to CSX, plaintiffs were traveling back to their home terminal at their own choice, this decision was purely for plaintiffs' benefit, and plaintiffs' actions were not in furtherance of CSX's business.

Deadhead transportation, or deadheading, is commonly understood as the practice whereby train crews are transported from one location to another, usually from an assignment location back to their point of origin or home station. *See California State Legislative Bd. v. Mineta*, 328 F.3d 605, 607 n.1 (9th Cir. 2003) (defining "deadheading as "the act of transporting employees between a train station and a duty assignment location"). Here, plaintiffs were traveling at the railroad's expense from where their active service ended to where they were to mark off. This was deadheading in all

---

[2]

The Supreme Court's language in *Hopson v. Texaco*, 383 U.S. 262, 264 (1966), which applied the *Sinkler* rationale to claims from seamen being transported in a taxi, underscores this point: "it was respondent [employer]–not the seamen–which selected, as it had done many times before, the taxi service. Respondent–the law says–should bear the responsibility for the negligence of the driver which it chose."

but name only.

CSX gave plaintiffs only two options. Because plaintiffs chose one, rather than the other, they were injured. There is no merit to defendants' contention that plaintiffs were not within the scope of their employment.

## 2. M.D. Transportation Was an Agent of CSX

The FELA imposes a continuous non-delegable duty on the railroad to provide a reasonably safe place to work. Plaintiffs' argue, and their point is well taken, that M.D. was an agent of CSX for purposes of FELA liability.

The leading case on the question of a railroad's FELA liability for the acts of a third party is *Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326 (1958). There, the Supreme Court held "when a railroad employee's injury is caused in whole or in part by the fault of others in performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA." *Id.* at 331-32.

This case falls squarely into the line of federal "taxi" cases. In *Penn Central Corp. v. Checker Cab Co.*, 488 F.Supp. 1225, 1228 (E.D. Mich. 1980), the railroad had settled its claims with its employee, and sought indemnity from the cab company. Examining the legal basis for the railroad's liability, the court stated "it is clear that where a railroad utilizes cab services to transport its employees, these services can constitute an operational activity of the railroad, thus rendering the railroad liable for injuries sustained by the employees in the course of cab transportation." *Id.* at 1228.

In *Leek v. Baltimore & Ohio Railroad Co.*, 200 F. Supp. 368 (D.C. W. Va. 1962), a noted case in this area of law, the railroad contracted with a taxi company to shuttle a crew from their point

6

of employment to the railroad yard. Through the fault of a cab driver, plaintiff was injured during this trip. *Id.* at 370-71. The district court found that the taxi service was performing operational activities for the railroad at the time of the accident. CSX argues that this case is distinguishable from the case at hand because the employees were 1) in the course of their employment; and 2) required to travel to the check out point. CSX's "course of employment" argument is moot. As for their second argument, CSX claims that plaintiffs voluntarily took themselves out of service, and it had no obligation to transport them.

Defendant's argument is not compelling. After the fatal accident, CSX officials gave plaintiffs two options. After plaintiffs chose one option, CSX had a duty to return them to Willard and to maintain a safe work environment. *Leek*, therefore, is a comparable case and supports plaintiffs' position.

Under *Sinkler* and its progeny, a court can deem an independent contractor to be an agent under the FELA when the contractor engages in operational activities on behalf of the railroad. In this case, the reasoning of *Leek* and *Penn Central* is applicable. While transporting plaintiffs to their home terminal at the direction of CSX, M.D. was performing an operational function. By getting the plaintiffs to where the railroad, for its convenience, wanted them to be, M.D. was doing something integral – making employees available when and where the railroad would be needing them – to the continuity of its transportation operations. M.D. was an agent of CSX within the meaning of the FELA at the time of the accident.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT

1. Defendant's motion for summary judgment [Doc. 57] be, and the same is hereby denied; and

2. Plaintiffs' counter-motion for summary judgment [Doc. 68] be, and the same is hereby granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

8